Roger Allen STEINKE,
et al., Respondents,

v.

CITY OF ANDOVER, Petitioner,
Appellant,

County of Anoka, Petitioner, Appellant,

Coastal States Gas Transmission Company
of Minnesota, a Delaware Corporation
jointly with LHC Pipeline Corporation
d/b/a Minnesota Intrastate Transmission
Systems, Respondent,

Manley Magnuson, Defendant.

No. C3–93–865.

Supreme Court of Minnesota.

Dec. 16, 1994.

Rehearing Denied Jan. 25, 1995.

George C. Hoff and Patricia A. Kuderer, Hoff, Barry & Kuderer, P.A., Eden Prairie, for City of Andover.

Robert M.A. Johnson, Anoka County Atty. and Anthony Palumbo, Asst. County Atty., Anoka, for County of Anoka.

Sheila A. Engelmeier and Thomas Marshall, Mackall, Crounse & Moore, Minneapolis, for Roger Allen Steinke, et al.

James G. Golembeck, Gerald Linnihan, Jardine, Logan & O'Brien, St. Paul, for respondent.

Robert J. McGuire, Cousineau, McGuire & Anderson, Minneapolis, for defendant, Manley Magnuson.

Carla J. Heyl, League of MN Cities, Shoreview, for League of MN Cities, amicus curiae.

Jay T. Squires, Ratwik, Roszak, Bergstrom & Maloney, P.A., Minneapolis, for Ass'n of MN Counties, amicus curiae.

## OPINION

KEITH, Chief Justice.

This appeal is from a decision by the court of appeals reversing summary judgment entered in favor of defendant City of Andover, and affirming a denial of summary judgment for defendant Anoka County. Both defendants asserted municipality immunity against personal injury claims brought by plaintiff Roger Steinke ("Steinke"), and loss of consortium claims brought by plaintiff Wenell Steinke, Steinke's wife. Because we hold that both Andover and Anoka are entitled to municipality immunity, we reverse, reinstate the judgment in favor of the City of Andover and remand to the district court with direction to enter judgment in favor of the County of Anoka.

In the early afternoon of January 24, 1989, Steinke was driving his snowmobile along a cleared pipeline easement in Anoka County. Traveling south at a speed in excess of 45 miles per hour, Steinke came upon Anoka County Ditch 71. He cleared the north bank of the ditch, but struck the south bank. He was thrown from his snowmobile and was seriously injured. Anoka constructed this drainage ditch around 1896, and had not altered it since 1920. In 1981, Manley Magnuson, a sod farmer, altered part of the ditch to square off his sod fields. The altered ditch partially abutted both Magnuson's sod field and Forest Meadows Park. Andover has owned and operated the park since 1976. In 1988, Anoka and Andover granted defendant Coastal States Gas Transmission Company of Minnesota, d/b/a Minnesota Pipeline Intrastate Transmission Systems ("MITS"), an easement and permits to lay an underground pipeline across Anoka County and through the park. MITS cleared a 30–foot–wide path and laid the pipeline along the easement and under the ditch. At the accident site, the ditch intersected the pipeline easement. The ditch was approximately 3 to 6 feet deep and 16 feet across. Neither Andover nor Anoka placed warning signs or barriers at the accident site. Steinke was not on a designated trail at the time of the accident and admits he was trespassing.

Steinke and his wife sued Anoka, Andover, MITS and Magnuson for Steinke's injuries. They alleged that Anoka and Andover failed to warn Steinke of the presence of the ditch, which they argued constituted a hidden, artificial condition. Andover brought a motion for summary judgment arguing it was immune from liability pursuant to Minn.Stat. § 466.03, subds. 6b and 6e (1992). Subdivision 6b affords municipalities immunity for conditions on unimproved property. Subdivision 6e affords municipalities immunity for parks and recreation areas. The district court denied Andover summary judgment. Anoka then brought a motion for summary judgment arguing it also was immune under section 466.03, subdivision 6b, as well as under section 466.03, subdivision 6. Subdivision 6 provides immunity for discretionary acts. The district court also denied Anoka's motion. Andover then brought a second motion for summary judgment, again asserting immunity under subdivisions 6b and 6e, and additionally under section 466.03, subdivision 13. Subdivision 13 provides additional municipality immunity for unimproved property.

The district court granted Andover summary judgment based on subdivision 13. The court of appeals reversed summary judgment entered in favor of Andover and affirmed the denial of summary judgment for Anoka. *Steinke v. City of Andover,* C3–93–865, 1993 WL 491248 (Minn.App., Nov. 30, 1993) (unpublished opinion).

## I.

In 1963, the Minnesota legislature enacted Minn.Stat. ch. 466, the Municipal Tort Liability Act. The Act imposes liability on every municipality for its torts and the torts of its officers, employees and agents acting within the scope of their employment. Minn.Stat. § 466.02. The Act also enumerates a number of specific exceptions to municipal tort liability. Minn.Stat. § 466.03.

Anoka argues it is entitled to discretionary function immunity under the Act. Municipalities are immune from "[a]ny claim based upon the performance or failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn.Stat. § 466.03, subd. 6. Discretionary immunity, however, does not protect all acts of judgment by government agents. *Nusbaum v. Blue Earth County,* 422 N.W.2d 713, 722 (Minn.1988). In defining what is a discretionary act, we have made a general distinction between "operational" and "planning" decisions. *Larson v. Indep. Sch. Dist. No. 314,* 289 N.W.2d 112, 120 (Minn.1979). Planning decisions involve questions of public policy and are protected as discretionary decisions. Operational decisions relate to the day-to-day operation of government and are not protected as discretionary decisions. *Holmquist v. State,* 425 N.W.2d 230, 232 (Minn.1988), *reh'g denied* (Minn., Aug. 24, 1988).

■ We have also observed, however, that the mere labeling of a governmental function as either operational or planning is not dispositive as to immunity. *Nusbaum,* 422 N.W.2d at 719, (citing *Cairl v. State,* 323 N.W.2d 20, 23 n. 2 (Minn.1982)). In deciding whether discretionary immunity applies, courts must examine the precise governmental conduct in question. *Nusbaum,* 422 N.W.2d at 722. The critical inquiry is whether the conduct involved a balancing of policy objectives. *Id.* Discretionary immunity protects the government only when it can produce evidence its conduct was of a policy-making nature involving social, political, or economic considerations, rather than merely professional or scientific judgments. *Id.*

In the present case, the district court and the court of appeals held that Anoka was not entitled to discretionary immunity. *Steinke,* C3–93–865, 1993 WL 491248 at *1. The court of appeals noted that Minnesota does not afford discretionary immunity for decisions that involve warning the public of known hazards. *Id.* The cases cited by the court of appeals, however, stand only for the proposition that when the government implements policy-based decisions, it is generally not immune from tort liability.[1] Whether a governmental agency was warning the public of known hazards is not relevant in determining whether the conduct involved discretionary decision making. We have noted that each case must be analyzed "in a fashion which focuses on whether the legislature intended to immunize the particular government activity that is the subject of the tort action." *Nusbaum,* 422 N.W.2d at 719, (citing *United States v. Varig Airlines,* 467 U.S. 797, 813, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660 (1984)).

We have recognized that the government's initial decision, whether to place signs warn-

---

1. *See Marlow v. City of Columbia Heights,* 284 N.W.2d 389, 392 (Minn.1979) (holding that city's failure to maintain beach and warn of dangerous conditions was operational function of decision to open beach); *Johnson v. County of Nicòllet,* 387 N.W.2d 209, 212 (Minn.App.1986) (holding that county's decision not to place guardrail on a dangerous road was operational because it implemented the county's policy decision to permit public use of road); *Ostendorf v. Kenyon,* 347 N.W.2d 834, 838 (Minn.App.1984) (holding that the State's failure to place warning signs on dangerous road was operational decision). *Cf. Young v. Wlazik,* 262 N.W.2d 300, 311 (Minn. 1977), *reh'g denied* (Minn., Nov. 23, 1977) (holding that the city's failure to close a street that led to a railroad crossing was discretionary because it involved legislative judgment balancing risk and convenience that crossing presented), *overruled in part on other grounds by Perkins v. Nat'l R.R. Passenger Corp.,* 289 N.W.2d 462, 466 (Minn.1979).

ing the public of potential hazards, is protected as a discretionary function because it involves the consideration of several policy factors. In *Holmquist,* a motorist sued the State for injuries he received in a one-vehicle accident. 425 N.W.2d at 230. The motorist alleged that the State was negligent because it failed to post a sign warning motorists of a change in highway shoulder width. *Id.* We noted in *Holmquist* that a policy contained in the Minnesota Traffic Engineering Manual ("MTEM"), which directed agencies not to post signs warning motorists of highways with narrow shoulders unless special conditions existed, was a discretionary decision. *Id.* at 234. The decision required the evaluation of many policy considerations including safety, uniformity and financial implications. *Id.* We also noted in *Holmquist* that if implementing the MTEM policy only required scientific or professional judgments, as opposed to additional policy considerations, it would not be protected as discretionary. *Id.*

■ In the present case, Anoka had placed "Deep Ditch" signs at both private and public ditches along county roads. Anoka claimed it did so because snowmobilers have the right to cross county roads and to operate their snowmobiles in recognized right-of-ways. The Steinkes argue that by placing "Deep Ditch" signs along these roads, Anoka made a policy decision to warn snowmobilers of ditches, and the failure to place these signs at the accident site was only an operational function of that decision. We cannot agree with the Steinkes' reasoning. As noted by Anoka, snowmobilers have a right to cross county roads and to operate their snowmobiles in recognized right-of-ways. *See* Minn.Stat. § 84.87 (1992). Anoka's decision to place signs only along county roads and recognized right-of-ways involved more than merely a professional or scientific judgment; it involved the type of political, social and economic considerations that lie at the center of discretionary action. Anoka needed to consider safety issues, financial burdens, and the possible legal consequences of voluntarily placing signs at areas outside recognized right-of-ways. It is not the role of courts to second-guess such policy decisions. In *Holmquist,* we said "[t]he discre-

tionary function exception is designed to assure that the courts do not pass judgment on policy decisions entrusted to coordinate branches of government." 425 N.W.2d at 231.

We hold that Anoka's actions were protected as discretionary acts and it is immune from liability pursuant to Minn.Stat. § 466.03, subd. 6.

### II.

Andover argues it is entitled to parks and recreation area immunity under the Municipal Tort Liability Act. The Act provides every municipality shall be immune from:

> Any claim based upon the construction, operation, or maintenance of any property owned or leased by the municipality that is intended or permitted to be used as a park, as an open area for recreational purposes, or for the provision of recreational services, or from any claim based on the clearing of land, removal of refuse, and creation of trails or paths without artificial surfaces, if the claim arises from a loss incurred by a user of park and recreation property or services. Nothing in this subdivision limits the liability of a municipality for conduct that would entitle a trespasser to damages against a private person.

Minn.Stat. § 466.03, subd. 6e. The Steinkes' claim against Andover clearly is based on the operation of a park owned by the city. Steinke was injured on park property and alleges Andover failed to warn Steinke of the ditch. Andover is immune from liability unless its conduct "would entitle a trespasser to damages as against a private person." Minn. Stat. § 466.03, subd. 6e. The standard for determining whether a trespasser is entitled to damages under subdivision 6e is found in the *Restatement (Second) of Torts* § 335 (1965). *See Johnson v. Washington County,* 518 N.W.2d 594, 599 (Minn.1994).

Section 335 provides as follows:

> A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area of the land, is subject to liability for bodily harm caused to them by an artificial condition on the land, if

(a) the condition

    (i) is one which the possessor has created or maintains and

    (ii) is, to his knowledge, likely to cause death or serious bodily harm to such trespassers and

    (iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and

(b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved.

■ The Steinkes argue there are material facts in dispute whether Andover knew snowmobilers constantly intruded upon park property and knew the ditch posed a serious threat of physical harm. Even when we view the facts in a light most favorable to the Steinkes, we find no evidence in the record to support the Steinkes' argument. First, the park was a summer nature park, not maintained by Andover in the winter. Second, a sign at the park entrance clearly indicated that motorized vehicles were not allowed in the park. Finally, Andover did not receive any accident reports or complaints involving snowmobilers at the accident site or in the park.

■ The Steinkes also argue the ditch was a hidden, artificial condition. In *Sirek v. State Dep't of Natural Resources*, we held that "a landowner will be liable only for failing to exercise reasonable care to warn trespassers about *hidden,* artificial dangers created or maintained by the landowner." 496 N.W.2d 807, 810 (Minn.1993) (emphasis added). Generally, whether a condition was hidden depends on whether the condition was visible, not on whether the injured party actually saw the danger. *See Munoz v. Applebaum's Food Mkt., Inc.*, 293 Minn. 433, 434, 196 N.W.2d 921, 922 (1972).

In the present case, the court of appeals held that factual issues existed as to whether the ditch was an artificial condition that posed a hidden danger to Steinke. *Steinke,* C3–93–865, 1993 WL 491248 at *2–3. There is no evidence in the record to support this holding. Recently, in *Johnson v. Washington County,* we held that a county, which had

asserted parks and recreation area immunity, was not liable under the section 335 trespasser standard for a child who drowned in a Reserve Pool at a county park. The pool was an artificially created swimming pond with a sand beach bottom. The pool had a gradually sloping bottom, and there were no concealed drop-offs or currents. We held that the county was immune because the pool contained no hidden dangers. *Johnson,* 518 N.W.2d at 599–600.

■ The ditch in the present case was a common earthen drainage ditch, of a type found throughout rural Minnesota. It was in an open and flat area and was not obstructed from view. The Steinkes have presented no credible evidence the ditch was concealed or contained any hidden dangers. Steinke had crossed the ditch at other points in the past and knew there were ditches in the area. He admits that even though it was his first time on the easement trail, he was traveling at a speed in excess of 45 miles per hour. Steinke claims he did not see the ditch until it was too late. Under the standard in *Munoz,* the issue is not whether Steinke actually saw the ditch, but whether he *could* have seen the ditch. 293 Minn. at 434, 196 N.W.2d at 922. Steinke, as a trespasser, had a duty to be aware of his surroundings. A landowner "is entitled to assume that trespassers will realize that no preparation has been made for their reception and will, therefore be on the alert to observe the conditions which exist upon the land." *Restatement (Second) of Torts* § 335 cmt. f, *cited in Sirek,* 496 N.W.2d at 810. Steinke's accident was a result of his failure to observe the normal conditions of rural land.

We reverse the decision of the court of appeals and hold that the ditch was not a hidden, artificial condition under the *Restatement (Second) of Torts* § 335. Andover is immune from liability pursuant to Minn.Stat. § 466.03, subd. 6e.

### III.

Because we hold that Anoka and Andover are respectively immune pursuant to Minn.

Stat. § 466.03, subds. 6 and 6e, we do not reach the issue of whether the property was "unimproved" for purposes of Minn.Stat. § 466.03, subds. 6b and 13.

Reversed. We reinstate judgment in favor of the City of Andover and remand to the district court with direction to enter judgment in favor of the County of Anoka.