**Douglas GUTBROD, Appellant,**

v.

**COUNTY OF HENNEPIN, Respondent.**

No. C7–94–2239.

Court of Appeals of Minnesota.

April 11, 1995.

Patrick W. Flanagan, Heuer & Vandelist, P.A., Minneapolis, for appellant.

Michael O. Freeman, Hennepin County Atty., Elizabeth Elder, Asst. County Atty., Minneapolis, for respondent.

Considered and decided by DAVIES, P.J., RANDALL and MULALLY,* JJ.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

EDWARD D. MULALLY, Judge.

Appellant Douglas Gutbrod (Gutbrod) brought this negligence action against respondent County of Hennepin (the county), alleging that the county's failure to repair a certain roadway caused him to have an accident on his motorcycle and sustain damages. The district court concluded that the county is immune from any liability and granted the county's motion for summary judgment. We affirm.

## FACTS

On May 23, 1992, Gutbrod was driving his motorcycle northbound on Hennepin County Road 44 near its intersection with Lotus Drive, in Minnetrista, Minnesota. He claims that he ran over a "rut" in the roadway, which caused him to lose control of his motorcycle, cross over into the oncoming lane of traffic, and strike another car.

In support of its summary judgment motion, the county submitted a number of exhibits, including the affidavit of Wayne Matsumoto, Road and Bridge Operation Engineer for Hennepin County Department of Public Works. Matsumoto states that "it is my job to recommend which Hennepin County roads should be repaired and when they should be repaired." Each year, Matsumoto receives requests from three district supervisors regarding which lane miles need repairs. He evaluates each request based on several factors, including road conditions, road locations, types of repair needed, costs of required repairs, perceived need for each repair relative to other required repairs, and efficient coordination of work crews. After considering these factors, Matsumoto recommends an overall plan which prioritizes required road repairs for the upcoming construction season. Matsumoto's recommendations "are based on how many lane miles of repair [the county] can afford under the budget and the condition of [the] roads including whether they present an immediate hazard to the public."

County Road 44, including the site of Gutbrod's accident, was scheduled to be selectively repaved by June 12, 1992. During a final inspection of the roadway in early May, Matsumoto saw "a crack in the center of the roadway near the Lotus Road intersection." Matsumoto explains further:

I knew at that time that paving preparation was scheduled to begin in one week and I did not believe the crack, which was one inch deep, was a hazard or of the type that needed immediate attention to prevent greater damage. Therefore I did not divert a special crew or equipment to immediately attend to the crack. The cost of diverting a spot patch crew was not warranted by the size and minimal hazard of the crack in the road.

On May 18, a crew began working on County Road 44. Gutbrod's accident occurred less than one week later, on May 23.

Gutbrod submitted no affidavits or other evidence in opposition to the county's summary judgment motion. In a memorandum to the district court, Gutbrod claimed that "photographs of the scene clearly establish a rut * * * six inches wide and one inch deep. This rut runs approximately 25 yards long." Gutbrod, however, failed to submit these photographs. Gutbrod's memorandum also stated:

According to the State of Minnesota, Department of Transportation, Maintenance Manual Section 5–791.026, "repair of roadbed deficiencies which immediately affect the safety of the traveling public shall be given first priority. Typical defects in this category are abrupt vertical variations, excessive raveling at cracks and potholes, and surfaces with low skid resistance."

While Gutbrod failed to submit a copy of this maintenance manual, the district court cited the manual in the memorandum attached to its order granting the county's motion for summary judgment. We may thus assume that the court took notice of the manual. *See* Minn.R.Evid. 201 (judicial notice of adjudicative facts).

In granting the county's motion for summary judgment, the district court made a number of detailed findings and concluded that the county "is immune from liability for any injuries sustained by [Gutbrod] due to

the repair and maintenance of Highway 44." This appeal followed.

## ISSUE

Did the district court err in granting summary judgment to the county?

## ANALYSIS

■ Summary judgment is properly granted when there is no genuine issue as to any material fact and either party is entitled to judgment as a matter of law. Minn. R.Civ.P. 56.03. To successfully oppose a summary judgment motion, the nonmoving party must present affirmative evidence sufficient to raise an issue of material fact: mere denials, general assertions and speculation are not enough. *See* Minn.R.Civ.P. 56.05; *Gonzales v. Hollins,* 386 N.W.2d 842, 845 (Minn.App.1986) (nonmoving party cannot simply rely on its pleadings to defeat summary judgment motion supported by affidavits).

■ Summary judgment is appropriate when a governmental entity establishes its actions are immune from liability. *See Ostendorf v. Kenyon,* 347 N.W.2d 834, 836 (Minn.App.1984). Such immunity is available against "[a]ny claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn.Stat. § 466.03, subd. 6 (1990). To determine whether a particular act is protected, it is necessary to distinguish planning level decisions from those at the operational level. *Holmquist v. State,* 425 N.W.2d 230, 232 (Minn.1988).

■ Planning level decisions are protected, and involve questions of public policy and the balancing of competing policy objectives. *Id.* Unprotected, operational level decisions relate "to the ordinary day-to-day operations of the government" and involve the exercise of scientific or professional judgment. *Id.; Nusbaum v. Blue Earth County,* 422 N.W.2d 713, 722 (Minn.1988). When determining whether immunity applies, this court must identify the precise governmental conduct being challenged. *See Nusbaum,* 422 N.W.2d at 722.

■ In this case, Gutbrod first challenges the county's decision not to immediately repair the crack or rut in County Road 44. He insists that the decision occurred at the operational level, since Matsumoto used his professional judgment when he determined that the crack did not warrant immediate repair. Gutbrod does not question the annual repair plan or schedule adopted by the county; the decisions involved in developing that schedule were clearly policy level decisions that are entitled to immunity. Instead, Gutbrod questions the repair priority given to the crack after Matsumoto discovered it. Gutbrod suggests that the crack should have been given first priority and repaired without delay because it was immediately dangerous to the traveling public.

The county's decision to adhere to the established repair schedule, however, was made by Matsumoto after he considered the risks and costs of changing that schedule. As such, its decision is protected. *See, e.g., McEwen v. Burlington N. RR. Co.,* 494 N.W.2d 313, 317 (Minn.App.1993) (state's decision to delay repainting of pavement markings after completion of spot overlay project protected because based upon consideration of limited resources and safety concerns), *pet. for rev. denied* (Minn. Feb. 25, 1993).

■ Even if the county had not presented evidence showing that its decision involved policy or planning considerations, Gutbrod failed to present any evidence to suggest that the crack constituted a dangerous condition requiring immediate repair. *Cf. Hansen v. City of St. Paul,* 298 Minn. 205, 211–12, 214 N.W.2d 346, 350–51 (1974) (decision of city's animal control officers to delay capturing stray dog not protected when dog was known to be dangerous). Gutbrod's complaint merely alleges that the rut caused him to lose control of his motorcycle. The mere occurrence of an accident does not necessarily establish that the crack was obviously dangerous.

Gutbrod also challenges the county's failure to place a warning sign near the crack. *See Ostendorf,* 347 N.W.2d at 838. He asserts that "a rut in the road which was significant enough to catch his front tire and

cause him to lose control of his motorcycle" is an obvious danger. Again, however, Gutbrod failed to submit any evidence to support his claim that the crack was dangerous.

The evidence merely established that the crack was in the center of the roadway, was one inch deep, and was scheduled to be repaired within one week. There was no evidence that cracks in the center of roadways tend to cause accidents, or that any accidents, other than Gutbrod's, occurred on this stretch of County Road 44. *See Seaton v. County of Scott,* 404 N.W.2d 396, 398–99 (Minn.App.1987), *pet. for rev. denied* (Minn. June 25, 1987). Since there was no evidence that the crack was dangerous or presented a dangerous condition, the presence or absence of warning signs was in the range of discretionary acts. *Berg v. City of St. Paul,* 414 N.W.2d 204, 207 (Minn.App.1987) (lack of evidence specifically showing accident site a dangerous part of the road fatal to plaintiff's claim); *Gonzales,* 386 N.W.2d at 845 (act is discretionary only if city did not have knowledge of dangerous condition at time of accident).

## DECISION

The grant of summary judgment to the county is affirmed.

**Affirmed.**