**Shirley BERG and Robert Berg, Respondents,**

v.

**HUBBARD COUNTY, Appellant.**

No. C8–97–1986.

Court of Appeals of Minnesota.

May 5, 1998.

Review Denied July 16, 1998.

David L. Stowman, Detroit Lakes, for respondent Shirley Berg.

Paul R. Aamodt, Fargo, ND, for respondent Robert Berg.

Daniel J. Trudeau, Therese M. Pautz, Daniel L. Scott, King & Hatch, P.A., St. Paul, for appellant.

Considered and decided by
SCHUMACHER, P.J., and SHUMAKER
and MANSUR,* JJ.

## OPINION

SCHUMACHER, Judge.

The district court denied summary judgment for the county on the bases of statutory and official immunity. The county appeals. We affirm in part, reverse in part, and remand.

## FACTS [1]

In reviewing summary judgment, we view the facts in the light most favorable to the non-moving party. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). On January 8, 1993, respondents Robert and Shirley Berg were travelling on appellant Hubbard County's Highway 4. The road is a two-way, paved highway with gravel shoulders. While the Bergs were rounding a gradual right-hand curve, the passenger-side tires entered a rut

---

\* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. The county raised concerns that some of the Bergs' facts were outside the record. Our decision is based on only those facts that are supported by the record pursuant to Minn. R. Civ. App. P. 128.02 and 128.03.

in the shoulder. Robert Berg attempted to steer out of the rut but lost control and the vehicle overturned, injuring Shirley Berg. The road and shoulder were partially covered with ice and snow. An expert for the Bergs opined that the rut existed prior to the ground freezing. In an earlier decision, this court rejected the county's assertion of snow and ice immunity. *Berg v. Hubbard County*, No. C0–97–2376, 1997 WL 177681 (Minn.App. Apr. 15, 1997) (applying Minn.Stat. § 466.03, subd. 4 (1996), *review denied* (Minn. June 26, 1997)).

A few days before the Berg accident, on January 5, 1993, at the same curve, another driver lost control. After the deputy sheriff responded to the January 5 accident, he notified the county that there was a drop off on the shoulder of County Road 4. The county maintenance supervisor inspected County Road 4 before the Bergs' accident but does not recall specifically inspecting the curve or inspecting the road for a rut. The record is unclear what exact information reached the county. The deputy called a dispatcher, who then called the county. The dispatcher noted in her log a problem with "People dropping off road due to way it was plowed." The deputy testified that he did not recall exactly what he told the dispatcher. The county claims that the dispatcher said that the deputy complained that County Road 4 was being plowed too wide. We view these conflicting factual assertions in the light most favorable to the Bergs, the non-moving parties.

### A. Summer Maintenance

The county's conduct in this case is measured in light of its summer, winter, and warning sign policies. First, the county's summer road maintenance policy includes maintenance of gravel shoulders on paved roads. This usually includes annual grading of the shoulders and repairing ruts and potholes as needed. In the summer months of 1991 and 1992, the county performed routine maintenance on County Road 4. Additionally, in 1992, the county initiated a new program to pave gravel shoulders on the inside curves of some of its roads. The purpose of the shoulder paving extension plan was to make permanent repairs to curves where erosion

had occurred. The county attempted to reduce the cost of paving shoulders by paving those that were near other major construction projects. In the summer of 1992, the county scheduled the curve where the Berg accident occurred for shoulder paving in the summer of 1993.

### B. Winter Maintenance

Second, under the county's winter maintenance and snow removal policy, the focus is on snow removal; the county does not grade gravel shoulders or repair ruts. The county testified that it does not repair ruts like the one in this case in the winter because it is physically and economically impractical; the shoulders and the repair materials are frozen and the cost of using alternative materials is prohibitive.

### C. Warning Signs

Third, according to the county engineer, warning signs are placed on roads when the conditions warrant. He testified that: (1) if a county employee identifies a hazardous condition, the amount of time it will take to repair the condition will depend on available personnel and materials; (2) even if a hazardous condition is not immediately repaired, "[county employees'] first requirement is to at least identify that there's a problem there that [the public] should at least look out for;" (3) while the placement of warning signs during the winter is rare, when a serious road hazard occurs, county employees would not leave it unattended but "would take probably a barricade out or something;" (4) the county does not place warning signs on roads in the winter when minor ruts or changes in road and shoulder elevation occur; and (5) the county rarely places warning signs on roads in the winter because "normally you can't pound a stake in the frozen ground" and because "they won't stay" in snowbanks. In addition, a county project manager testified that warning flags are kept in almost all of the county maintenance vehicles and that anyone in the maintenance department can make the decision to place one at a hazardous location.

The Bergs sued the county for improper design, construction, and maintenance of the

road, and for failing to warn of a hazardous condition on the road. In September 1996, the county moved for summary judgment on the bases of snow and ice, statutory, and official immunity. The district court, without addressing statutory or official immunity, granted the county summary judgment on the basis of snow and ice immunity. The Bergs appealed and we reversed. Upon remand, the county moved for summary judgment on the bases of statutory and official immunity. The district court denied the county's motion on both grounds. The county appeals.

## ISSUES

Is Hubbard County entitled to statutory immunity?

2. Is Hubbard County entitled to vicarious official immunity?

## ANALYSIS

■■■ We review the denial of an immunity-based motion for summary judgment "because immunity from suit is effectively lost if a case is erroneously permitted to go to trial." *Watson by Hanson v. Metropolitan Transit Comm'n*, 553 N.W.2d 406, 411 (Minn. 1996). On appeal from summary judgment, we determine whether genuine issues of material fact exist and whether the district court erred in its application of the law. *Id.* Whether government action is protected by immunity is a question of law. *Zank v. Larson*, 552 N.W.2d 719, 721 (Minn.1996). The government has the burden of proving it is entitled to immunity. *Waste Recovery Coop. v. County of Hennepin*, 517 N.W.2d 329, 332 (Minn.1994).

## I. STATUTORY IMMUNITY

We first address whether the county was protected by statutory immunity. The supreme court has held:

Statutory immunity exists to prevent the courts from conducting an after-the-fact review that second-guesses "certain policy-making activities that are legislative or executive in nature." *Nusbaum v. Blue Earth County*, 422 N.W.2d 713, 718 (Minn. 1988). If a governmental decision involves

the type of political, social and economic considerations that lie at the center of discretionary action, including consideration of safety issues, financial burdens, and possible legal consequences, it is not the role of the courts to second-guess such policy decisions. *Steinke v. City of Andover*, 525 N.W.2d 173, 176 (Minn.1994).

*Watson*, 553 N.W.2d at 412. We must examine the precise governmental conduct at issue to decide if statutory immunity applies. *Steinke*, 525 N.W.2d at 175.

In this case, the precise conduct at issue is the county's response to the rut on the edge of County Road 4. We first review statutory immunity as it applies to the county's summer and winter maintenance policies. The district court, in denying statutory immunity to the county, summarily concluded that the county's summer and winter maintenance policies were not entitled to statutory immunity.

### A. Summer Maintenance

■■■ The record indicates that the rut existed before freeze up. The district court held that the county's actions, to the extent they were based on its summer road maintenance policy, were operational and thus were not protected by immunity. We disagree. Statutory immunity protects a government's road maintenance procedure if it is based on a policy that balances policy objectives, such as safety and economic considerations. *Nusbaum*, 422 N.W.2d at 722; *Hennes v. Patterson*, 443 N.W.2d 198, 204 (Minn.App. 1989), *review denied* (Minn. Sept. 15, 1989). In this case, the county's summer maintenance procedures, annual grading, repair of potholes as needed, and paving of only some inside curves, were the product of a maintenance policy that balanced safety and economic factors. We therefore reverse that portion of the district court's decision that held that the county was not entitled to statutory immunity for its summer road maintenance policy. Similarly, to the extent the Bergs' claims challenge the county's failure to repair the rut in the summer, those claims are prohibited by statutory immunity.

## B. Winter Maintenance

■ The Bergs' claims challenge the county's snow removal procedures and its winter road maintenance procedures. The district court concluded that the county was not entitled to statutory immunity regarding its snow removal policy; it did not address the county's winter maintenance procedure. The county complied with its snow removal procedures; accordingly, statutory immunity is appropriate. *Hennes*, 443 N.W.2d at 204. To the extent the Bergs' claims challenge the county's snow removal procedures, we reverse the district court and grant the county statutory immunity.

■ Regarding winter road maintenance, the record indicates that the county normally does not fix ruts in the winter. County employees testified gravel is frozen and would be too costly to break-up; bituminous is only available from May until October; and sand/salt mix applied to frozen ruts does not adhere and could cause further erosion. The county's decision not to repair the rut in the winter balanced economic and safety considerations and is protected by statutory immunity. *Id.* To the extent the Bergs' claims challenge the county's failure to repair the rut in the winter, those claims also are barred by statutory immunity.

## C. Warning Signs

■ The district court held that the county is not entitled to statutory immunity because it failed to warn the Bergs of the rut. We agree. Notice is a prerequisite to finding a government entity liable for a hazardous condition. *Hansen v. City of St. Paul*, 298 Minn. 205, 207–08, 214 N.W.2d 346, 348 (1974). In this case, the deputy's call put the county on notice of the rut three days before the Bergs' accident. The deputy's call. The county admits that it places warning signs on winter road hazards in some instances. While the county had notice of the rut, no one from the county inspected the curve or looked for a rut. In order for statutory immunity to protect a government's warning sign decision, an actual decision has to have been made in light of that policy. *See Nusbaum*, 422 N.W.2d at 723 (holding discretionary immunity inapplicable

to claim of failure to recommend or post warning signs where there was no evidence of any policy considerations).

■ We conclude that statutory immunity does not apply to the county's failure to warn in this case because the county's decision regarding warning of the rut was not based on either an examination of the rut or an application of the characteristics of the rut to its warning sign policy. Further, our decision against finding statutory immunity does not "second-guess" the policy-making capacity of a separate branch of government, *Id.* at 718, because there was no policy-related county decision regarding how to deal with the rut. The county cannot meet its burden of establishing that it is entitled to statutory immunity for not warning of the hazard.

In conclusion, to the extent that the Bergs challenge the county's summer and winter road maintenance policies, the county is entitled to immunity. The county, however, has not met its burden of proving it is entitled to statutory immunity regarding warning of the rut.

## II. OFFICIAL IMMUNITY

■ The county also challenges the district court's denial of summary judgment on the basis of official immunity. In light of our above analysis, we need only consider whether vicarious official immunity applies to the county's failure to place a warning sign at the curve. We review a district court's official immunity decision de novo. *Johnson v. State*, 553 N.W.2d 40, 45 (Minn.1996). Official immunity protects an employee " 'from the fear of personal liability that might deter independent action.' " *Janklow v. Minnesota Bd. of Exam'rs for Nursing Home Adm'rs*, 552 N.W.2d 711, 715 (Minn.1996) (quoting *Elwood v. Rice County*, 423 N.W.2d 671, 678 (Minn.1988)).

■ The county argues that official immunity should apply to the decisions that were made according to its road maintenance and snow plowing policies. The carrying out of the policies by county employees is the proper focus of an official immunity analysis. *Cf. In re Alexandria Accident of Feb. 8, 1994,*

561 N.W.2d 543, 549 (Minn.App.1997) (holding that the application of official immunity was proper where snow plow operator, in implementing the state's snow removal policy, had to make discretionary decisions such as the speed to travel and the type of equipment to use), *review denied* (Minn. June 26, 1997).

██ Before official immunity would bar the Bergs' failure to warn claims, Smith actually would have had to make a decision based on or implementing the county's warning policy. When the evidence is viewed in the light most favorable to the Bergs, a question of fact exists as to the extent of Smith's knowledge of the accident location and circumstances. Accordingly, the county cannot meet its burden of establishing that it made a decision to act or not act based on its warning policy; official immunity, therefore, is inapplicable. We affirm the district court's denial of the county's claim for official immunity.

## DECISION

We reverse in part, affirm in part, and remand. We reverse the district court's summary judgment and grant the county statutory immunity to the extent that the Bergs' claims challenge the county's summer and winter snow removal and maintenance policies. We affirm the district court's holding that the county is not entitled to statutory or official immunity because of its failure to implement its warning sign policy after it was notified of a previous accident. Its failure to inspect the condition prevented it from measuring the road hazard against its warning sign policy; accordingly, the county is unable to point to a protected decision that merits the application of statutory or official immunity. The case is remanded to the district court for further proceedings in accordance with this decision.

**Affirmed in part, reversed in part, and remanded.**