**Jerald MINDER, Appellant,**

v.

**ANOKA COUNTY, et al., Respondents.**

No. A03–1132.

Court of Appeals of Minnesota.

April 13, 2004.

Gerald Keating, Minneapolis, MN, for appellant.

Robert M.A. Johnson, Anoka County Attorney, Anthony C. Palumbo, Assistant County Attorney, Anoka, MN, for respondents.

Considered and decided by KALITOWSKI, Presiding Judge; SHUMAKER, Judge; and CRIPPEN, Judge.*

## OPINION

KALITOWSKI, Judge.

Appellant Jerald Minder brought this action against respondent Anoka County, alleging that the county's failure to maintain its roads, place warnings signs, and

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to     Minn. Const. art. VI, § 10.

exercise reasonable care in identifying and correcting a pothole in the roadway, caused his motorcycle accident. He challenges the district court's grant of the county's motion for summary judgment, arguing that the county is not entitled to statutory immunity and that a genuine issue of material fact exists as to whether an inherent danger existed and whether the county had notice of that danger.

## FACTS

Appellant suffered serious injuries after he lost control of his motorcycle on Anoka County Road 1/East River Road. Appellant contends that a pothole on the road caused his accident, which we assume to be true for purposes of this appeal. Appellant retained an accident reconstructionist who opined that: (1) a pothole caused appellant's accident; (2) the pavement of County Road 1 had exceeded its useful life; and (3) as evidenced by the county's numerous repair and maintenance records of the area, the county had notice that the road was hazardous and in constant disrepair.

Appellant sued the county, alleging that the county (1) failed to maintain the roadway and repair the pothole that caused appellant to lose control of his motorcycle; (2) failed to warn users of the roadway that the road was rough and in disrepair; and (3) failed to exercise reasonable care in identifying and correcting the pothole. The county moved for summary judgment, arguing that official and statutory immunity barred appellant's claims, or alternatively, that appellant had failed to establish causation and the county's notice of a dangerous condition. The district court granted summary judgment in favor of the county, finding that appellant's claims were barred by discretionary immunity, or alternatively, appellant had failed to establish that the pothole was an inherently dangerous condition or that the county had actual notice of it.

The relevant segment of County Road 1 was reconstructed and paved in 1971. Douglas Fischer, the county engineer in charge of the county's highway department, explained that the county uses a rating system to measure the overall suitability of a road segment called an overall condition index (OCI). The county uses the evaluation system to determine the allocation of resources for highway repair and reconstruction. In rating a road's suitability, the county considers several factors including distress, geometrics, ride, safety/accident rate, service, and structure. The scale runs from 1 (worst) to 100 (best). In December 1999, the relevant segment of County Road 1 received a 64.30 rating, which, according to the county, indicates that the road is adequately functioning to carry the daily traffic safely. The accident rate for this segment of County Road 1 was .80 per million vehicle miles, which resulted in a safety rating of 94.00 (out of 100), and the accident rate for the entire road was 1.86 per million vehicle miles, which resulted in a safety rating of 73.00. In his affidavit, dated August 16, 2002, Fischer stated that the county highway department intended to resurface the relevant segment of County Road 1 in 2003, but budget cuts proposed by the county board could delay the project.

Jon Olson, the county's former highway engineer and current manager of the public services division, explained that in determining what roads to repair, the county rates the roads by considering "whether the road has slipping, rutting, alligatoring, longitudinal cracking, transverse cracking, and drainage problems." The highway department then submits the list to the public works committee, a subcommittee of the county's board of commissioners, which oversees the highway department. The

committee then determines what roads will be reconditioned or overlayed that year, considering the volume of traffic expected on the roads, the number of complaints about the road, input from local municipalities, and the knowledge of upcoming total reconstruction of the road. All these factors are balanced against the amount of money available for this reconditioning or overlay, and a judgment is made about a plan for the coming year.

According to Olson, the highway department also performs road patching by "spot patching" or "crew patching." Spot patching occurs when highway department crews respond to specific complaints about a road surface or travel county roads and repair areas of road surface that need attention. Crew patching involves more workers and is designed to patch all holes and cracks over a specified length of road. Before assigning patching crews, several factors are considered, including weather conditions, time of year, road location, volume of traffic on the road, the existence and number of citizen complaints, cost of repair materials based on the useful life of the road, the availability of equipment, materials, and crew members, and whether there is money available in the budget to finance these types of repair.

The county's superintendent of maintenance, Jim Christensen, stated in his affidavit that there were no prior accidents caused by potholes on the relevant segment of County Road 1. Nor were there any requests to fill in any cracks or potholes in that area within one year prior to October 31, 1999. But records indicate that County Road 1 as a whole was repaired and maintained many times in the past. Appellant claims that one work order to repair a pothole was not completed; the work order says it was "not done." But those orders include the word "o.k." and the words "not done" have a line drawn through them indicating that the work may have been completed.

## ISSUE

Is Anoka County entitled to statutory immunity?

## ANALYSIS

On appeal from summary judgment, an appellate court determines whether there are any genuine issues of material fact and whether the district court erred in applying the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). This court views the evidence in the light most favorable to the party against whom judgment was granted. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). Whether governmental action is protected by statutory immunity is a question of law which appellate courts review de novo. *Conlin v. City of St. Paul,* 605 N.W.2d 396, 400 (Minn.2000).

■ Counties have a statutory duty to construct, reconstruct, improve, and maintain county highways under Minn.Stat. § 163.02, subd. 1 (1998). But where a plaintiff alleges that a county caused his or her injuries and the county alleges an immunity defense, a court does not get to the issue of whether the county breached any duty if it determines that the county is entitled to immunity because the purpose of the doctrine of statutory immunity is to provide immunity from suit, not just from liability. *Rehn v. Fischley,* 557 N.W.2d 328, 332–33 (Minn.1997). Therefore, we first address whether the county was protected by statutory immunity.

■ The Minnesota Tort Claims Act holds municipalities, including counties, liable for their torts. Minn.Stat. § 466.02 (1998). Under the doctrine of statutory immunity, often referred to as discretionary immunity, counties are immune from

liability for claims "based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn.Stat. § 466.03, subd. 6 (1998). Because discretionary immunity is an exception to the general rule of governmental liability, courts must narrowly construe it. *Conlin*, 605 N.W.2d at 400. A county asserting an immunity defense has the burden of demonstrating facts showing that it is entitled to the defense. *Rehn*, 557 N.W.2d at 333.

■ Statutory immunity is based on the separation of powers and is intended to prevent judicial review, through the medium of a tort action, of executive and legislative policy-making decisions. *Zank v. Larson*, 552 N.W.2d 719, 721 (Minn.1996). The supreme court has stated:

> If a governmental decision involves the type of political, social and economic considerations that lie at the center of discretionary action, including consideration of safety issues, financial burdens, and possible legal consequences, it is not the role of the courts to second-guess such policy decisions.

*Watson by Hanson v. Metro. Transit Comm'n*, 553 N.W.2d 406, 412 (Minn.1996) (citation omitted).

■■ In defining what is a discretionary act, appellate courts distinguish between planning and operational decisions. *Conlin*, 605 N.W.2d at 400. While planning decisions involve questions of public policy and are protected as discretionary actions, operational decisions relate to the day-to-day government operation and are not protected. *Holmquist v. State*, 425 N.W.2d 230, 232 (Minn.1988).

■ The first step in analyzing a claim of statutory immunity is to identify what governmental conduct is being challenged. *Steinke v. City of Andover*, 525 N.W.2d

173, 175 (Minn.1994). Here, appellant challenges the county's maintenance of the road, its failure to place a warning sign, and its failure to repair the alleged pothole.

## A. Failure to Maintain Road

■ Statutory immunity protects a government's road maintenance and inspection procedures if they are based on a policy that balances policy objectives, such as safety and economic considerations. *Gerber v. Neveaux*, 578 N.W.2d 399, 403 (Minn.App.1998), *review denied* (Minn. July 16, 1998); *Berg v. Hubbard County*, 578 N.W.2d 12, 15 (Minn.App.1998), *review denied* (Minn. July 16, 1998); *Gutbrod v. County of Hennepin*, 529 N.W.2d 720, 723 (Minn.App.1995) (finding that decisions involved in developing a repair schedule are policy-level decisions entitled to statutory immunity).

■ In the present case, Fischer explained that the county uses an evaluation system to measure the overall suitability of a road segment in order to determine the allocation of resources for highway repair and reconstruction. In rating a road's suitability, several factors are considered, including distress, geometrics, ride, safety/accident rate, service, and structure. In addition, Olson explained that the highway department also rates county roads by considering "whether the road has slipping, rutting, alligatoring, longitudinal cracking, transverse cracking, and drainage problems." The highway department then submits the list to the public works committee, a subcommittee of the county's board of commissioners, which oversees the highway department. That committee then determines what roads will be reconditioned or overlayed that year, considering the volume of traffic expected on the roads, the number of complaints about the road, input from local municipalities, and

the knowledge of upcoming total reconstruction of the road. All these factors are balanced against the amount of money available for this reconditioning or overlay. Based on this evidence, we conclude that the county balanced competing political, social, and economic factors in formulating its maintenance policy, and therefore, it is entitled to statutory immunity.

Appellant claims that the affidavits submitted by the county are conclusory and insufficient to establish policy-level decision-making, citing *Conlin* in support of this proposition. 605 N.W.2d 396 (Minn. 2000). In *Conlin*, the defendant city submitted two affidavits from its street maintenance engineer and attached a four-page complaint log. *Id.* at 399. The court found that the affidavits and complaint log did not show a policy of not posting warning signs; they merely showed that the city had a practice of tracking street complaints. *Id.* at 402. And the court found that the affidavits merely identified generalized concerns and parroted back caselaw language. *Id.* at 402–03. But unlike *Conlin*, the affidavits here explain in detail the factors the county considers in rating roads and formulating its road inspection and maintenance policy and the process by which the county determines what roads will be repaired. Thus, we conclude that the county's affidavits sufficiently establish that the county engaged in immune policy-level decision-making in formulating its maintenance policy.

Appellant also cites *Johnson v. County of Nicollet* for the proposition that the county did not have discretion to decide not to maintain the road. 387 N.W.2d 209, 212 (Minn.App.1986). But unlike the present case, in *Johnson*, a county official stated that the road where plaintiff was injured was hazardous, a previous accident had occurred at the site, and expense was not a factor in deciding whether to place a guardrail at the site. *Id.* at 210. And importantly, this court's statement in *Johnson* that "[i]n actions alleging that a governmental body failed to safely maintain roads and sidewalks, case law consistently holds that the discretionary act exception does not apply," *id.* at 211, is of questionable validity in light of this court's subsequent holdings in *Gerber, Berg,* and *Gutbrod.*

Moreover, *Johnson* and some older unpublished decisions of this court have failed to separate the analysis of whether a governmental body is entitled to immunity from determining whether the governmental body is liable for breaching a duty. In light of the evolution of the statutory immunity doctrine over the past 20 years, we conclude that these two inquiries are properly separate and distinct.

## B. Failure to Warn

"Whether a governmental agency was warning the public of known hazards is not relevant in determining whether the conduct involved discretionary decision making." *Steinke,* 525 N.W.2d at 175. "The question is not whether the [government's] conduct resulted in a condition posing an unreasonable risk of harm; it is whether the conduct consisted of planning or policymaking decisions (protected) or operational level decisions (unprotected)." *Holmquist,* 425 N.W.2d at 232. In other words, "[w]arning of hazards by placing signs is not inherently either discretionary or operational; classification depends on the factors considered in making the decision." *Christensen v. Mower County,* 587 N.W.2d 305, 307 (Minn.App. 1998) (citing *Steinke,* 525 N.W.2d at 175; *Holmquist,* 425 N.W.2d at 234). Therefore, adopting or forming a policy on sign usage is discretionary if it involves balancing policy factors. But exercising solely professional judgment as to traffic flow or

similar nonpolicy factors is not discretionary. *Christensen,* 587 N.W.2d at 307. Further, in order for statutory immunity to protect a government's warning sign decision, an actual decision has to have been made in light of a protected policy. *Nusbaum v. Blue Earth County,* 422 N.W.2d 713, 723 (Minn.1988); *Berg,* 578 N.W.2d at 16.

■ The county does not argue that it made a policy-level decision to not place a warning sign near the pothole in question; instead, it argues that it did not even know the pothole existed. Although appellant makes a bare assertion that one work order indicates that the county knew about this particular pothole, his argument is based on the county having constructive notice of the roadway in general and the pothole in particular. And even considering the facts in the light most favorable to appellant, he has failed to establish that the county had actual knowledge that the pothole existed. Although constructive notice may be relevant to show that a county breached a duty, we do not reach that issue if we conclude that the county is entitled to statutory immunity.

■ In order to analyze a failure-to-warn claim to determine whether statutory immunity applies, it is implicit in the caselaw that the governmental body must have created or had actual notice of the alleged dangerous condition. *See, e.g., Conlin,* 605 N.W.2d at 399 (city created alleged danger by oiling and sanding streets); *Steinke,* 525 N.W.2d at 174 (county constructed the drainage ditch, the alleged danger); *Olmanson v. Le Sueur County,* 673 N.W.2d 506, 510 (Minn.App.2004) (county had constructive easement over culvert, the alleged danger); *Christensen,* 587 N.W.2d at 306 (county created alleged danger by seal-coating streets); *Berg,* 578 N.W.2d at 14 (another accident occurred and deputy sheriff informed county of the dangerous

condition prior to plaintiff's accident); *Gutbrod,* 529 N.W.2d at 722 (county engineer discovered crack/rut in road a few days prior to plaintiff's accident). Put simply, a county cannot decide whether to place a warning sign near an alleged dangerous condition if it does not know the condition exists. And a county does not lose immunity merely because it failed to warn about an unknown condition.

■ Because a plaintiff that alleges a failure-to-warn claim based on constructive notice is really challenging a county's inspection and maintenance policy, a county that does not have actual knowledge of the dangerous condition will be immune from such claims where its policy balances competing social, economic, and political factors. *See, e.g., Zaske v. Lee,* 651 N.W.2d 527, 532–33 (Minn.App.2002) (concluding that imputing knowledge to the county through constructive notice was a direct challenge to the county's inspection policy for discovering problems with traffic-control devices). Therefore, because we have already determined that the county's maintenance policy is protected by statutory immunity, appellant's failure-to-warn claim fails.

Appellant cites *Ostendorf v. Kenyon* in support of his argument that even where statutory immunity insulates a decision not to repair a particular hazard, it does not immunize the county from liability for failure to warn of the same hazard. 347 N.W.2d 834 (Minn.App.1984). But in *Ostendorf,* the state constructed the road, the alleged danger. *Id.* at 836. Further, appellant ignores subsequent cases, most notably *Steinke,* that limit the holding of *Ostendorf.* *Steinke* states that whether the government warned the public of known hazards is irrelevant in determining whether it is entitled to discretionary immunity. 525 N.W.2d at 175. And in *Nguyen v. Nguyen,* this court specifically stat-

ed that the appellant erroneously relied on *Ostendorf* and other cases suggesting that discretionary immunity does not apply to decisions that involve warning the public of known hazards and reiterated the holding of *Steinke*. 565 N.W.2d 721, 723 (Minn. App.1997). Therefore, *"Ostendorf* and similar cases are important only in illustrating implementation decisions that do not involve the evaluation of public policy considerations." *Id.*

## C. Failure to Repair Pothole

If the county had actual knowledge of the alleged pothole and failed to repair it, we would need to determine whether the county was entitled to statutory immunity or vicarious official immunity on this claim. But because the county did not know about the pothole, we conclude that this claim is yet another challenge to the county's maintenance policy, which on this record fails.

## DECISION

The county is entitled to statutory immunity on appellant's failure-to-maintain claim because the county balanced competing political, social, and economic factors in promulgating its maintenance policy. The county is also entitled to statutory immunity on appellant's failure-to-warn and failure-to-repair claims because the county did not have actual notice that the alleged pothole existed. Finally, because we conclude that the county is entitled to statutory immunity, we do not reach the merits of appellant's negligence claims.

**Affirmed.**