Michael J. CONLIN, Respondent,

v.

CITY OF SAINT PAUL, petitioner,

Appellant.

No. C0–98–1541.

Supreme Court of Minnesota.

Feb. 10, 2000.

Clayton R. Robinson, Jr., City Attorney, Margaret A. Skelton, Assistant City Attorney, St. Paul, for appellant.

Karen J. Kingsley, Kaplan & Kingsley, P.A., St. Louis Park, for respondent.

## OPINION

BLATZ, Chief Justice.

The City of St. Paul (City) appeals from a decision by the court of appeals holding that the City is not entitled to statutory immunity for its failure to use signs to warn motorists about the condition of recently sealed streets. The district court granted the City's motion for summary judgment based on its claim that a protected policy decision was made not to use warning signs on these types of road projects. The court of appeals reversed, holding that the City did not provide sufficient evidence that it had made a policy decision, and that instead the decision was a professional judgment not entitled to statutory immunity protection. We also hold that the City's evidence was insufficient to support its burden of proof on the claim of statutory immunity, and therefore we affirm.

The City of St. Paul has approximately 154 miles of streets which are maintained by a sealing process involving oiling and sanding. After being applied, the oil and sand are allowed to seal with the road surface for at least 72 hours. Excess sand is cleared at least three but not more than ten days after it is applied. One day prior to sealing, the city posts signs on the affected streets. The signs state "Tow Away Zone, No Parking, Street Oiling 7 am to 5 pm," and are removed when the oiling and sanding are completed. While the oil and sand mixture seals with the road surface, no signs are posted on the

streets and the streets are accessible to traffic.

On August 28, 1996, the "Tow Away Zone, No Parking, Street Oiling 7 am to 5 pm" signs were posted on Ross Avenue in St. Paul. The next day, city maintenance workers oiled and sanded Ross Avenue, and when that was completed, removed the signs.

On August 30, 1996, at about 10 p.m., respondent Michael Conlin drove his motorcycle northbound on White Bear Avenue and attempted a left turn onto Ross Avenue. As Conlin entered Ross Avenue, his motorcycle began to slide on the sand in the road and although he tried to recover, the motorcycle landed on its right side. Conlin claims he injured his shoulder, neck, and back, and now suffers from depression.

Conlin filed this lawsuit against the City claiming the City was negligent in failing to properly inspect and maintain Ross Avenue, creating the hazardous condition on Ross Avenue, and failing to warn of the dangerous condition. The City moved for summary judgment claiming statutory immunity from suit as to its failure to post warning signs, erect barricades, or take some other protective action.[1] The City claimed it made a protected policy decision not to take these actions and to instead respond to citizen complaints about the streets.

The City supported its motion with two affidavits, accompanied by several attached exhibits, of Gary Erichson, the street maintenance engineer for the Street Maintenance Division of the Public Works Department ("Erichson affidavits"). Erichson stated in his affidavits that he made the decision not to post warning signs and to instead respond to complaints after considering several factors, including

the minimal public safety concerns associated with this project; traffic consid-

erations that barricades or cones blocking large areas for up to a ten day period would create congestion and flow problems; social considerations that residents on sealed roads would be inconvenienced by barricades and financial considerations that Street Maintenance's limited funds would be required to hire and pay additional crews for posting and removal of signs or barricades.

In addition, one of the City's exhibits consisted of four pages from the City's "street maintenance complaint log" that is used to record citizen complaints about street conditions and the City's actions to remedy the complaints. In his affidavits Erichson explained that these complaint log pages detail all the complaints made to the City about streets during the period of the sealing project, but that only one complaint was received that related to the sealing project.

The district court granted summary judgment to the City, concluding that the City was entitled to statutory immunity protection because the Erichson affidavits "plainly set[ ] forth the factors he balanced when he decided to respond to complaints rather than to post signs." The court of appeals reversed, holding that the City's decision not to post warning signs was not entitled to statutory immunity. *See Conlin v. City of St. Paul*, No. C0–98–1541, 1999 WL 109605, at *6 (Minn.App. March 2, 1999). The court of appeals reasoned that there was insufficient evidence of a policy-making decision because the record did not include "specific information" on any of the factors considered by the City in arriving at its decision, and because "one supervisor's statement that he unilaterally decided that warning signs would not be used" was not evidence of a policy decision. *Id.* at *5. The court then concluded that Erichson's decision was a pro-

---

1. The City also claimed vicarious official immunity for the project foreman's decision as to how much sand to spread on the oiled street. The district court denied official immunity for this action, but the court of appeals reversed. The official immunity issue is not before us.

fessional judgment not entitled to statutory immunity protection. *See id.* at *6. The City appeals from this decision.

## I.

■ "On an appeal from summary judgment, this court determines whether there are genuine issues of material fact and whether the district court erred in applying the law." *Watson by Hanson v. Metropolitan Transit Comm'n*, 553 N.W.2d 406, 411 (Minn.1996). In addition, this court must view the evidence in the light most favorable to the nonmoving party, in this case the respondent, Conlin. *See Gleason v. Metropolitan Council Transit Operations*, 582 N.W.2d 216, 217 (Minn.1998). Whether governmental action is protected by statutory immunity is a question of law, which this court reviews de novo. *See id.* at 219.

■ Under the doctrine of statutory immunity, often referred to as discretionary immunity, municipalities are immune from liability for claims "based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn.Stat. § 466.03, subd. 6 (1998). This is an exception to the general rule that "every municipality is subject to liability for its torts and those of its officers, employees and agents acting within the scope of their employment or duties whether arising out of a governmental or proprietary function." Minn.Stat. § 466.02 (1998). The discretionary function exception is interpreted narrowly. *See Angell v. Hennepin County Regional Rail Auth.*, 578 N.W.2d 343, 346 (Minn.1998).

■ Statutory immunity does not protect all governmental conduct. *See Steinke v. City of Andover*, 525 N.W.2d 173, 175 (Minn.1994). There are two types of government decisions: planning level, which are protected, and operational level, which are not protected. *See id.* "Planning level decisions are those involving questions of public policy, that is, the eval-

uation of factors such as the financial, political, economic, and social effects of a given plan or policy. Operational level decisions, on the other hand, involve decisions relating to the ordinary day-to-day operations of the government." *Holmquist v. State*, 425 N.W.2d 230, 232 (Minn. 1988). As noted by this court in *Holmquist*, the distinction between these two types of decisions is not always clear.

> That public policy decisions and the professional decisions involved in carrying out settled policies have in common the evaluation of complex and competing factors cannot be gainsaid. It is, however, the evaluation and weighing of social, political, and economic considerations underlying public policy decisions, not the application of scientific and technical skills in carrying out established policy, which invokes the discretionary function exception affording governmental immunity.

*Id.* at 232–33. There is a "gray area" dividing protected and unprotected decisions, but the underlying concern is whether the conduct at issue involves the balancing of public policy considerations in the formulation of policy. *See Angell*, 578 N.W.2d at 347. In addition, each case must be analyzed by focusing on "whether the legislature intended to immunize the particular government activity that is the subject of the tort action." *Nusbaum v. County of Blue Earth*, 422 N.W.2d 713, 719 (Minn.1988).

■ The first step in an analysis of a statutory immunity claim is to identify the conduct at issue. *See Angell*, 578 N.W.2d at 346. At issue on this appeal is the City's conduct of responding to specific citizen complaints about recently sealed streets, rather than taking other action such as placing warning signs or restricting access to the streets.

## II.

■ The City first argues that the court of appeals incorrectly held that the financial considerations associated with a

policy decision must involve more than an unspecified "de minimus" cost. The City claims that such a standard, requiring submission to the courts of the actual costs of alternative courses of action, would improperly engage the judiciary in the legislative process of evaluating whether the costs considered by a municipality in making a policy decision were significant or de minimus.

While the court of appeals' use of this language may be misleading or confusing, we do not agree with the City that the opinion adopts this standard. Although the opinion cites *Christensen v. Mower County*, 587 N.W.2d 305 (Minn.App.1998), and quotes its de minimus language, the court of appeals' focus is on the insufficiency of the evidence offered by the City. *See Conlin*, 1999 WL 109605, at *4–5. In noting that no actual costs were submitted by the City, the court of appeals was simply recognizing the overall lack of evidence to support the City's claim that not placing warning signs was the result of an actual policy decision and entitled to statutory immunity.

When reviewing the evidence, a court may not conclude that a challenged decision is not protected policy-making simply because the cost of rejected alternatives was de minimus. This type of analysis would improperly put the court in a legislative role, and would contravene the purpose of the statutory immunity doctrine.

> Statutory immunity exists to prevent the courts from conducting an after-the-fact review which second-guesses "certain policy-making activities that are legislative or executive in nature." If a governmental decision involves the type of political, social and economic considerations that lie at the center of discretionary action, including consideration of safety issues, financial burdens, and possible legal consequences, it is not the role of the courts to second-guess such policy decisions.

*Watson by Hanson*, 553 N.W.2d at 412 (citation omitted). Therefore, we conclude that cost evidence may be used to determine *whether* a protected planning decision was made, but not to conclude, after the fact, that the decision is not protected because the municipality should have decided differently.

### III.

 The City next argues that the court of appeals held that statutory immunity only protects decisions made by a city council or other governing body and that this holding is overreaching and burdensome to the city. The City's claim is based on the opinion's language that the City is not entitled to statutory immunity because "the record does not demonstrate that the city *council* formally exercised its discretion and made a policy-level decision not to post signs after oiling and sanding." *Conlin*, 1999 WL 109605, at *6 (emphasis added).

While the City properly states the holding set forth in the court of appeals decision, when that holding is read in the context of the entire opinion, it is clear that the court of appeals did not limit statutory immunity only to decisions made by a city council or other elected governing body. The opinion does not discuss this issue and does not cite any case law to support such a proposition. While the issue has not been squarely presented to this court, we have never concluded that only decisions of the city council or other elected governing bodies are protected by statutory immunity. Further, we have granted immunity on the basis of a decision made by nonelected individuals for the municipality. *See, e.g., Fisher v. County of Rock*, 596 N.W.2d 646, 651, 653–54 (Minn.1999) (holding decision not to install guard rails at bridge was protected by statutory immunity as part of a county "policy" made by the county engineers to maintain bridges in their "as-built" condition); *Watson by Hanson*, 553 N.W.2d at 413 (holding that the decision by the Chief of Transit Police not to place security per-

sonnel on the bus where plaintiff was beaten was protected by statutory immunity).

In the instant case, the court of appeals referred to the City as the "City" throughout its opinion and only inserted "council" once, albeit in its holding. Nonetheless, if the court of appeals' decision had been based on the proposition that a city council must formalize the decision, there would have been no need for its discussion of Erichson's affidavits and whether they were sufficient evidence. Instead, the opinion would have simply noted that Erichson's decision was not a decision by an elected governing body, and thus his decision was not protected by statutory immunity. Therefore, we conclude that the City's argument that the court of appeals improperly limited statutory immunity is unpersuasive.

### IV.

The City's final argument goes to the heart of this matter – whether the City provided sufficient evidence to support its statutory immunity claim. "Discretionary immunity protects the government *only when it can produce evidence* its conduct was of a policy-making nature involving social, political, or economic considerations, rather than merely professional or scientific judgments." *Steinke*, 525 N.W.2d at 175 (emphasis added); *see also Nusbaum*, 422 N.W.2d at 722. The burden is on the City to show it engaged in protected policy-making and is entitled to statutory immunity. *See Steinke*, 525 N.W.2d at 175.

The City submitted the Erichson affidavits in support of its claim that not placing warning signs or taking other action during the sealing phase of the roadwork is protected by statutory immunity. Therefore, the issue is whether these affidavits are sufficient evidence to satisfy the City's burden of proof for its statutory immunity claim. Evidence guides the court's analysis when determining if conduct is planning or operational.

Where the government has not provided any evidence as to how it made the decision for which it claims immunity, this court has held that the government was not entitled to statutory immunity. *See, e.g., Angell*, 578 N.W.2d at 347 (stating that "the record is completely devoid of any evidence establishing that the failure to install access restrictions was based on policy decisions involving economic, political, and social factors"); *Holmquist*, 425 N.W.2d at 234 (concluding "[t]he State has not shown, indeed it has made no attempt to show, that the absence of a warning sign at the location in question was the result of a policymaking decision"); *Nusbaum*, 422 N.W.2d at 723 (deciding the state was not entitled to immunity because it "presented no evidence that the placement of the 'END 45 MILE SPEED' sign involved a balancing of policy objectives" and "no evidence to indicate that the failure to suggest warning signs was based on policy considerations").

The City has attempted to distinguish this case from the "no evidence" cases of *Angell, Holmquist*, and *Nusbaum* by pointing to the Erichson affidavits. The City argues that the Erichson affidavits, and the attached pages from the City's complaint log, are evidence of an established policy of responding to citizen complaints. However, this argument is unconvincing, as the log does not demonstrate anything more than that the City has a practice of tracking street complaints, with most complaints seeming to involve debris and dead animals in the street. Rather than proof of a policy decision not to post warning signs in this instance, the log only shows the City has a longstanding practice of responding to any complaint regarding a city street.

In addition, rather than explaining how and why a decision pertaining to the street sealing project was made and detailing the underlying considerations, the Erichson affidavits are conclusory. The affidavits merely identify generalized concerns and seemingly parrot back language from our

case law without incorporating specific facts demonstrating that a decision was in fact made. For example, while the city claims it considered the "minimal public safety concerns" associated with the project, it does not explain what those concerns might be and how they factored into the decision. The City claims residents would be inconvenienced by barricades, but does not explain how it arrived at this conclusion. And, as the court of appeals noted, the City claims it evaluated "financial considerations," but did not provide evidence of actual costs of the various alternatives. While none of these points, alone, might be dispositive as to the City's statutory immunity claim, the overall lack of explanation and detail in the affidavits leaves too many questions unanswered.

Therefore, the minimal showing by the City here places this case in the "gray" area noted by this court in *Angell,* making it difficult to conclude whether the decision was in fact one of planning or, rather, operation. *See Angell,* 578 N.W.2d at 347. By allowing minimal averments in an affidavit to be sufficient evidence of a planning decision, there is a risk that professional or scientific decisions, as well as nondecisions, will be bootstrapped into planning decisions and thus protected by statutory immunity. Such a minimal showing is also troubling because it conflicts with this court's precedent that statutory immunity should be narrowly construed, *see Angell,* 578 N.W.2d at 346, and that the party seeking immunity has the burden of proof, *see Steinke,* 525 N.W.2d at 175. As we are not convinced that these conclusory affidavits satisfy the City's burden of proof on this issue, we affirm the court of appeals and hold that the City is not entitled to statutory immunity for its failure to use warning signs or other protective measures following the street sealing project.

Affirmed.

PAGE, Justice (dissenting).

I respectfully dissent. Statutory immunity is meant to protect planning level governmental decisions from judicial second-guessing. *See Nusbaum v. County of Blue Earth,* 422 N.W.2d 713, 718 (Minn. 1988). The reviewing court is not to look behind those planning level decisions because of the risk of violating the separation of powers. *See id.* Here, the court contends that the City of St. Paul failed to meet its burden of proof and is therefore not entitled to statutory immunity because the affidavits submitted by Gary Erichson, head of the Street Maintenance Division of the Public Works Department of St. Paul, are conclusory and merely identify generalized concerns.

This court's job is not to determine how the City went about weighing the factors that support its decision; rather we must determine whether the factors identified in Erichson's affidavits were actually considered, whether they were political, economic or social in nature, and whether their consideration resulted in a planning level decision. *See Holmquist v. State,* 425 N.W.2d 230, 232 (Minn.1988). If there are no disputed material facts and the City establishes that (1) in fact it had a policy regarding posting signs and barricades at street sanding; (2) the factors identified in Erichson's affidavit were considered in developing the policy and sealing projects; and (3) the factors considered are of a political, social or economical nature, the City has met its burden of proof and is entitled to statutory immunity.[1]

The evidence in the record concerning the Erichson affidavits is uncontroverted. Gary Erichson, head of the Street Mainte-

---

1. Notwithstanding the court's discussion of the court of appeals' holdings concerning de minimus costs and decisions having to be made by the city council, the court of appeals incorrectly decided those issues. Financial considerations associated with policy decisions need not involve more than an unspecified "de minimus" cost and statutory immunity does not protect only city council decisions.

nance Division, submitted affidavits on behalf of the City based on his personal knowledge about decisions he made.[2] Erichson stated in the affidavits that he made the decision not to post warning signs or place barricades on streets that had been sanded and sealed after considering the following factors: the minimal public safety concerns associated with street sealing projects; traffic considerations that barricades or cones blocking large areas for up to a ten day period would create congestion and flow problems; social considerations that residents on sealed roads would be inconvenienced by barricades; and financial considerations that Street Maintenance's limited funds would be required to hire and pay additional crews for posting and removing signs or barricades. Clearly, those considerations balance competing political, economic, and social concerns. Thus, absent some reason to believe that Erichson's affidavits lack credibility, it is not clear what additional information is necessary to establish that a planning level decision was made. Certainly, the City could have provided additional information as to the details of the factors it considered, as well as how it analyzed them. For example, the City could have provided the specifics of the cost analysis it did or it could have provided detailed information about congestion and flow problems created. But unless there is a genuine issue of material fact as to whether the City actually made a policy decision or considered the factors it claims it considered, that additional information goes to the prohibited questions of whether the City made the best or the right policy decision.

Once the City asserted that it considered political, economic, and social considerations, it met its burden. At that point, the burden shifted to Conlin to rebut the City's claim of immunity by creating a genuine issue of material fact as to whether a planning level decision regarding signs and barricades was actually made or whether the City actually considered the factors it says it did in making the decision. But Conlin provided no evidence creating any such genuine issue of material fact.

The court fears that allowing "minimal averments" to support a planning level decision creates a risk that professional or scientific decisions as well as nondecisions will be "bootstrapped into planning decisions and thus protected by statutory immunity." The court implies that the City is "bootstrapping" a professional or scientific decision or perhaps a nondecision into a planning level decision to improperly claim statutory immunity. While the court's fears may in some situations be legitimate, they are not a legitimate concern in this case. The evidence simply does not demonstrate "bootstrapping" on the part of the City. First, there is nothing to suggest that the considerations that went into the City's decision not to post signs or barricades at the street sanding and sealing projects were based on professional or scientific judgments. Nor is there any evidence that supports the notion that the City is relying on a nondecision.

To establish that it was entitled to statutory immunity, the initial burden was on the City to prove that it made a planning level decision not to post warning signs or set up barricades for street sanding and sealing projects. Using Erichson's affidavits along with other evidence in the record, the City met its initial burden, shifting to Conlin the burden to rebut the City's claim for immunity. Conlin was unsuccessful in his rebuttal. Therefore, the dis-

---

**2.** To be sufficient for summary judgment purposes, an affidavit must be made based on the affiant's personal knowledge, must set forth facts that would be admissible in evidence, and the affiant must be competent to testify about the matter. *See* Minn. R. Civ. P. 56.05; *Corwine v. Crow Wing County,* 309 Minn. 345, 361, 244 N.W.2d 482, 490 (1976).

trict court did not err in granting the City's motion for summary judgment on this issue. As a matter of law, on the record presented, the City is entitled to statutory immunity.