*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-0075**

Linda Holper,
Appellant,

vs.

City of Gilman,
Respondent.

**Filed September 2, 2025
Affirmed
Bond, Judge**

Benton County District Court
File No. 05-CV-24-19

Tyler J. Adams, Markve & Zweifel, PLLC, Maple Grove, Minnesota (for appellant)

Jason J. Kuboushek, Carlos Soto-Quezada, Iverson Reuvers, Bloomington, Minnesota (for respondent)

Considered and decided by Bond, Presiding Judge; Slieter, Judge; and Ede, Judge.

**NONPRECEDENTIAL OPINION**

**BOND**, Judge

Appellant challenges the summary-judgment dismissal of her tort claim against respondent-city arising out of respondent's alleged negligent maintenance of the municipal sanitary sewer system. The district court determined that the challenged governmental conduct is protected by discretionary-function immunity under Minn. Stat. § 466.03, subd. 6 (2024). We agree and thus affirm.

**FACTS**

This case stems from water damage to appellant Linda Holper's home resulting from a backup in the municipal sanitary sewer system maintained by respondent City of Gilman. Holper sued the city, asserting claims of negligence and breach of implied contract. The city moved for summary judgment, arguing, among other things, that statutory immunity barred Holper's negligence claim and that Holper's breach-of-implied-contract claim failed as a matter of law. The city supported its motion with several exhibits, including deposition testimony from multiple city officials, city-council minutes, invoices, and an engineering report. The following undisputed facts are taken from the summary-judgment record.

The city's sewer system was installed in 1964. The city re-lined the sewer system in the 1990s. Rather than conducting regular maintenance on the sewer system, the city relies on a complaint-based system. Under that system, when a resident experiences a backup or other sewer issue, the resident contacts the mayor or a city-council member, who in turn contacts the part-time city employee responsible for maintenance of the sewer system, who then responds and makes any necessary repairs. In addition, the maintenance employee monitors the sewer system, including daily monitoring of inflow at the city's lift station and the water level of the city's wastewater treatment ponds.

Twice a year, the city tests the calibration of its pumps by determining how much sewer water can be pumped in an hour. Throughout the spring and summer, the city releases sewer water through the pumps and monitors how much sewer water can be released into the ponds.

2

In 2016, the city hired a private contractor to completely rebuild the lift station and install new pumps and control modules. In 2020, Benton County informed the city that it would be conducting a project on two of the county roads that ran through the city. According to deposition testimony from a city-council member and the mayor, the city recognized that its sewer system needed repairs and city officials frequently discussed the potential cost of replacing the sewer system.

To assess the feasibility of combining a sewer replacement project with the county's road project, the city hired an engineering firm to evaluate the sewer system. The city also hired a subcontractor to jet-clean and videotape the sewer lines. Water was jetted through the sewer pipes at high speeds to clean the pipes and clear potential obstructions, and the engineering firm used the footage to assess and rate sections of the sewer pipes. Overall, the subcontractor determined that "for the age of the sewer, the sewer lines were in pretty good shape." But the subcontractor rated the sections in front of Holper's home as "poor."

The engineering report noted immediate concerns with the sewer system, including "the poor condition of sanitary sewer pipes that have sags, cracks and excessive infiltration, [and] the need for proper erosion control in the wastewater pond treatment system." The engineering report recommended that the city replace its sewer pipes and make improvements to its sanitary ponds. The engineering report estimated that the cost to improve and replace sections of the city's sewer system would be roughly $5.8 million and recognized that "[t]he proposed improvements are most likely not viable unless the City of Gilman receives some grant funding package."

The city has a tax levy of approximately $40,000 to $50,000 per year, from which it funds city operations and pays city employees' salaries. Aware that the city's levy would not cover the cost of replacing the sewer system, city officials investigated other funding mechanisms, including federal and state grants, U.S. Department of Agriculture loans, and other sources. The city was ultimately unable to secure funding through any of these sources and, without the necessary funds to replace the sewer system, decided to postpone the repairs recommended in the engineering report. Instead, the city decided that the 2020 jet-cleaning was sufficient to maintain the sewer until it could be replaced. The city considered factors including that the sewer system was a gravity system that slopes toward the wastewater treatment pond, the city might not have adequate funds to jet-clean the sewer lines on an annual basis, and, under its complaint-based system, the city could continue to respond to resident complaints about the sewer system in lieu of performing regular scheduled maintenance.

On the morning of Sunday, April 16, 2023, sewage from the city's sanitary sewer system backed up into Holper's basement. Two of Holper's three sons were at her home that morning and they saw water in the basement at about 9:00 a.m. Roughly two hours later, they called Holper's third son, who was the city's mayor. The mayor called the maintenance employee. The maintenance employee did not hear the phone ring or answer the mayor's call and the mayor did not leave the maintenance employee a message.

Holper's family contacted a private plumber, who arrived at about 3:00 p.m. There were no blockages between Holper's sewer line and the city's main line but, by opening a manhole in front of Holper's home, the plumber discovered a blockage in the city's main

4

sewer pipe. The plumber manually cleared the pipe. Around the same time, the maintenance employee arrived and helped the plumber clear the blockage.

The district court granted the city's motion for summary judgment, determining that the city's decisions regarding maintenance of its sewer system are entitled to immunity under the discretionary-function exception to municipal tort liability and that Holper's breach-of-implied-contract claim failed as a matter of law.

Holper appeals.

**DECISION**

Summary judgment is appropriate if the moving party shows that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Minn. R. Civ. P. 56.01. We review a district court's summary-judgment decision de novo. *Visser v. State Farm Mut. Auto. Ins. Co.*, 938 N.W.2d 830, 832 (Minn. 2020). In a summary-judgment appeal, "we examine whether there are any genuine issues of material fact and whether the district court erred in its application of the law." *Kenneh v. Homeward Bound, Inc.*, 944 N.W.2d 222, 228 (Minn. 2020). "Fact issues exist when reasonable persons might draw different conclusions from the evidence presented." *Hanson v. Dep't of Nat. Res.*, 972 N.W.2d 362, 372 (Minn. 2022) (quotation omitted). We view the evidence in a light most favorable to the nonmoving party without weighing the facts. *DLH, Inc. v. Russ*, 566 N.W.2d 60, 70 (Minn. 1997).

Holper challenges the district court's determination that the city's sewer-maintenance decisions are entitled to statutory immunity, barring her negligence claim.[1] A municipality is generally liable for torts "of its officers, employees and agents acting within the scope of their employment or duties." Minn. Stat. § 466.02 (2024). That general rule of liability is subject to multiple exceptions, including an exception for tort claims "based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn. Stat. § 466.03, subd. 6. Statutory immunity for discretionary functions applies "when there has been a planning-level decision; that is, social, political, or economic considerations have been evaluated and weighed as part of the decision-making process." *Schroeder v. St. Louis County*, 708 N.W.2d 497, 504 (Minn. 2006).[2] Statutory immunity "is construed narrowly to avoid precluding Minnesotans from recovering for injuries caused by municipalities' tortious conduct unless necessary to avoid judicial branch interference with policymaking activities best left to the legislative or executive branch." *Doe 601 by Doe 601 v. Best Acad.*, 17 N.W.3d 464, 481 (Minn. 2025). Application of statutory immunity is a question of law that we review de novo. *Conlin v. City of St. Paul*, 605 N.W.2d 396, 400 (Minn. 2000).

---

[1] On appeal, Holper does not challenge the district court's grant of summary judgment to the city on her implied-breach-of-contract claim.

[2] The discretionary-function exception to municipal tort liability under Minn. Stat. § 466.03, subd. 6, is referred to as both "statutory immunity" and "discretionary immunity." *Christopherson v. City of Albert Lea*, 623 N.W.2d 272, 275 (Minn. App. 2001). In the interest of clarity, we use the term "statutory immunity" in this opinion.

We apply a two-step analysis to determine whether a municipality is entitled to statutory immunity. *Christopherson*, 623 N.W.2d at 275. First, we identify the challenged governmental conduct. *Id.* Second, we determine whether that conduct involved operational or planning-level decisions. *Id.* Statutory immunity applies only to a municipality's planning-level decisions, not to its operational decisions. *Conlin*, 605 N.W.2d at 400. We consider each step of the statutory-immunity analysis in turn.

**The Challenged Governmental Conduct**

To identify the precise challenged governmental conduct, we generally look to the plaintiff's allegations. *Gleason v. Metro. Council Transit Operations*, 582 N.W.2d 216, 219 (Minn. 1998). Holper's complaint alleged that the city breached its duty of care by "failing to conduct maintenance" and "failing to rectify known defects" in the sewer system and that "routine inspection, maintenance, or repair of the Sewer System would have prevented the blockage to the Sewer System that caused [Holper's] property to flood." Similarly, in her opposition to the city's summary-judgment motion, Holper argued that the city's negligence flowed from its failure to "implement or conduct any form of inspections or maintenance."

Holper argues that the district court erred by identifying the challenged governmental conduct as the city's 2020 decision to delay replacing the sewer system. Holper contends that the challenged conduct encompasses the city's alleged inadequate inspection and maintenance of the sewer system generally, conduct which is broader than the 2020 decision. Holper is correct that, in one part of its summary-judgment order, the district court referred to the challenged conduct as the city's "decision to delay replacing

7

the city's sewer system." But the district court also identified Holper's claims as involving the city's failure "to take reasonable measures to maintain its sewer system and remedy the defects in the sewer system." The district court's focus on the city's maintenance and repair of the sewer system is consistent with Holper's position throughout this litigation that the challenged governmental conduct is the city's alleged failure to adequately inspect, maintain, and repair the sewer system.

Holper argues that her negligence claim is based on the city's "complete absence of any maintenance" of the sewer system, which is "inaction" rather than governmental conduct that could trigger statutory immunity. But "a city's decision not to remedy a defect in its sewer system" is itself governmental conduct. *Christopherson*, 623 N.W.2d at 276 (quoting *Chabot v. City of Sauk Rapids*, 422 N.W.2d 708, 710-711 (Minn. 1998)). Furthermore, the undisputed facts from the summary-judgment record show that the city conducts regular monitoring of the system, uses a complaint-based system to identify and respond to sewer maintenance issues, updated its lift station in 2016, and jet-cleaned the sewer pipes in 2020. The record does not support Holper's assertion that the city conducted no maintenance at all on the sewer system.

Accordingly, we conclude that the challenged governmental conduct is the manner in which the city inspected, maintained, and repaired its sewer system.

**Whether the Challenged Conduct is a Discretionary Function**

Having identified the challenged governmental conduct, we next consider whether the conduct was the result of a discretionary function and is thus immune, or an operational function not entitled to immunity. *Nusbaum v. Blue Earth County*, 422 N.W.2d 713, 722

8

(Minn. 1988). Operational decisions involve the "day-to-day operations of government, the application of scientific or technical skills, or the exercise of professional judgment." *Schroeder*, 708 N.W.2d at 504. Planning or policy-making decisions, on the other hand, involve questions of public policy and "the evaluation of factors such as the financial, political, economic, and social effects of a given plan or policy." *Conlin*, 605 N.W.2d at 400.

Determining whether conduct is operational or discretionary is "not a simple task," as it necessarily requires reviewing the facts specific to each case, without engaging in "a mere labeling approach." *Doe 601*, 17 N.W.3d at 477 (quotation omitted). The burden rests on the government to show "how it made the decision for which it claims immunity." *Id*. at 479 (quotation omitted). To establish that the challenged governmental conduct involved policy-making decisions, "the municipality must produce evidence of how it made the decision for which it claims immunity. Broad, conclusory assertions that the municipality based its decision on economic, social, political, and financial factors are insufficient." *Id.* (quotation and citation omitted).

The city argues that its decisions regarding the inspection, maintenance, and repairs of the sewer system are entitled to statutory immunity because they were policy-making decisions involving the weighing of competing economic, social, political, and financial considerations. To support its claim of statutory immunity, the city produced deposition testimony of the mayor, a city-council member, and the maintenance employee, as well as exhibits including invoices from the 2020 jet-cleaning, city-council meeting minutes, and the engineering report. This evidence established that the city's tax levy was not sufficient

9

to cover the cost to conduct the sewer repairs recommended in the 2020 engineering report. The city was unable to secure additional funding to finance the sewer replacement and, therefore, decided it could not move forward with either the engineering report's recommendations or annual jet-cleaning. Instead, the city decided to maintain its system of responding to resident complaints, rely on the 2020 jet-cleaning, and continue to have the maintenance employee monitor the sewer system.

In *Christopherson*, plaintiffs sued the City of Albert Lea for damages caused by a sewer backup. 623 N.W.2d at 274. At some point prior to the backup, the city had commissioned an engineering study to determine whether its sewer system could handle certain amounts of infiltration or inflow. *Id.* After a flood event overloaded the system, sewage backed up into plaintiff's basement. *Id.* The city asserted that its sewer-maintenance decisions were made after balancing financial and policy considerations and, therefore, were protected by statutory immunity. *Id.* We agreed, concluding that the city was entitled to statutory immunity because its "decisions regarding its budget, and sewer maintenance, repair, and inspections" were policy decisions that "involved balancing financial and policy considerations." *Id.* at 275-76; *see also Chabot*, 422 N.W.2d at 709-11 (determining that the city's financially driven decision to delay improvements to a stormwater holding pond's drainage system was a policy-making decision entitled to statutory immunity); *Magnolia 8 Props., LLC v. City of Maple Plain*, 893 N.W.2d 658, 665 (Minn. App. 2017) (concluding that the city was entitled to statutory immunity for its decision to maintain a water main by responding to complaints and conducting repairs as

10

soon as possible because the city established that it based its maintenance policy on economic factors).

Here, as in the foregoing cases, the city met its burden to produce evidence demonstrating "how it made the decision for which it claims immunity" and to show that its decisions relating to the inspection, maintenance, and repair of the sewer system were policy-making decisions made after balancing competing economic, social, political, and financial factors. *Doe 601*, 17 N.W.3d at 479 (quotation omitted). The city's decisions regarding the maintenance and repair of its sewer system, specifically its decisions to forgo replacing the sewer system in 2020 and to instead rely on the recent jet-clean and the complaint-based system for sewer maintenance, were the product of an ongoing decision-making process that balanced the need for sewer repairs against cost constraints. *See Chabot*, 422 N.W.2d at 710-11; *Christopherson*, 623 N.W.2d at 276. Thus, we conclude that the city's decisions related to its inspection, maintenance, and repair of the sewer system—which are the bases for the challenged conduct—are protected by statutory immunity.

Holper also asserts that the city failed "to take adequate measures to remedy a problem with the Sewer System upon notification by [Holper]." Holper argues that the city's failure to sufficiently respond to the sewer backup on April 16 was an operational decision not protected by statutory immunity.[3] But "[i]f in addition to professional or

---

[3] Citing *Jindra v. City of St. Anthony*, 533 N.W.2d 641, 643 (Minn. App. 1995), Holper asserts that a reasonable fact-finder could determine that the city failed to meet its responsibilities of maintaining the sewer system and preventing sewer backups such as the one that occurred in Holper's home. *Jindra* was not a statutory-immunity case.

11

scientific judgment policy considerations played a part in making a decision, then planning level conduct is involved and statutory immunity applies." *Christopherson*, 623 N.W.2d at 276 (quoting *Fischer v. County of Rock*, 596 N.W.2d 646, 652 (Minn. 1999)). Thus, even if the city failed to adequately respond on April 16, it was in part because of the city's financial and policy-level decision to continue using a complaint-based system to respond to sewer issues. *See Magnolia 8 Props.*, 893 N.W.2d at 663 (rejecting claim that city's failure to implement water-main reconstruction plan and its failure to sufficiently respond after a water-main leak were separate governmental conduct because "both relate to the city's maintenance policy"); *Christopherson*, 623 N.W.2d at 276 (rejecting claim that city employee's failure to fulfill maintenance duties was operational conduct not protected by statutory immunity because "even if city employees were negligent in performing operational duties, it was due in part to the city's funding decisions" not to make certain sewer-system improvements).

In sum, the city met its burden to show that the manner in which it inspected, maintained, and repaired its sewer system was the result of planning-level decisions involving professional judgments about and balancing of economic, financial, and policy considerations. Accordingly, the challenged conduct is a discretionary function entitled to

---

*Christopherson*, 623 N.W.2d at 276 (distinguishing *Jindra* because it did not address statutory immunity). Therefore, *Jindra* is not helpful to the question before us of whether governmental conduct Holper claims to be negligent is a discretionary function protected by statutory immunity under Minn. Stat. § 466.03, subd. 6.

immunity under Minn. Stat. § 466.03, subd. 6. The district court did not err by granting summary judgment for the city.[4]

**Affirmed.**

---

[4] Because we resolve this case on statutory-immunity grounds, we do not reach the parties' arguments on appeal.